# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## WESTERN DIVISION

**JAMES EDWARD LOTT**                                                                              **PLAINTIFF**

**4:10CV00213-BRW**

**MICHAEL J. AUSTERE,**
**Commissioner of the**                                                                            **DEFENDANT**
**Social Security Administration**

## ORDER

Pending is a review of the Commissioner's denial of Supplemental Security Income and Disability Insurance Benefits. Plaintiff and Defendant have submitted briefs (Doc. Nos. 16, 21). After reviewing the record, Plaintiff's request for relief is DENIED.

### I.    BACKGROUND

#### A.    Procedural Background

Plaintiff applied for Supplemental Security Income and Disability Insurance Benefits on January 28, 2008.[1] Plaintiff claimed to be disabled from work since June 13, 2007, because of bi-polar disorder, fibromyalgia, and illiteracy.[2] The applications were initially denied on April 11, 2008,[3] and, after reconsideration, were denied again on August 7, 2008.[4] Administrative Law Judge ("ALJ") Eliaser Chaparro heard Plaintiff's case on August 11, 2009.[5] The ALJ denied benefits on September 29, 2009, finding that based on Plaintiff's age, education, work

---

[1] Administrative Record ("A.R.") 98-106.

[2] *Id*.

[3] A.R. 60-62.

[4] A.R. 67-70.

[5] A.R. 26-52.

1

experience, and residual functional capacity that there are jobs in the national economy that he could perform.[6] The Appeals Council denied Plaintiff's appeal on January 28, 2010.[7]

### B. Factual Background

Plaintiff worked as a long haul truck driver for a number of different trucking companies from January 2003 to June 2007.[8] At the hearing before the ALJ, Plaintiff said that he doesn't remember how many companies he worked for.[9] Some of the trucking jobs he held for only a few days, or less, but most often long enough for the company orientation or new employee training class, and for his would-be employers to discover that he could not read or write.[10] Other times he was fired for being late with his loads after getting lost, or for incorrect paperwork.[11] His girlfriend rode with him on some of the jobs that lasted longer.[12] She helped to read the maps and highway signs, and to fill in the paperwork when he dropped off his loads.[13] The longest of these jobs was two or three months.[14] He had to quit trucking after an argument with his girlfriend caused her to leave, and he was no longer able to reach his destinations.[15]

---

[6]A.R. 6-19.

[7]A.R. 1-4.

[8]A.R. 32.

[9] A.R. 33.

[10]*Id*.

[11]A.R. 36.

[12]A.R. 34-35.

[13]*Id*.

[14]A.R. 33.

[15]A.R. 36.

2

Before trucking, Plaintiff worked as a painter for about a year for a school district.[16] He has also worked at various times as a mechanic, a forklift operator, and a carpenter.[17] Plaintiff graduated from high school in 1986 or 1987, he doesn't remember when exactly.[18] In high school he took special education classes.[19] As a juvenile he suffered from Attention Deficit Hyperactivity Disorder.[20] He has been treated for alcohol dependency, and admitted to receiving citations for driving while intoxicated and public intoxication.[21] Plaintiff also reported that he frequently got into fights with family members, and had verbal arguments with employers and co-workers.[22] On July 16, 2007, Plaintiff saw Dr. Michael R. Beard to discuss his problems.[23] The doctor's notes indicate that Plaintiff is often irritable and has problems with his memory and anxiety.[24] Dr. Beard diagnosed patient as bi-polar.[25] He received counseling and was prescribed medications for his mental health problems at Clinic Counseling, Inc. of Benton, Arkansas.[26] In counseling he reported that he thought he could read minds, and that he had auditory

---

[16] A.R. 33.

[17] A.R. 32.

[18] A.R. 30.

[19] *Id.*

[20] A.R. 243.

[21] A.R. 31.

[22] A.R. 37.

[23] A.R. 236.

[24] *Id.*

[25] *Id.*

[26] A.R. 237-55.

hallucinations.[27] On April 2, 2008, Dr. Marvin Kirk diagnosed Plaintiff with "mildly severe" fibromyalgia.[28] On September 16, 2009, Dr. Kenneth Counts diagnosed him with schizophrenia.[29]

## II.   STANDARD

In reviewing the ALJ's decision, I must determine whether there is substantial evidence in the administrative record to support the ALJ's decision.[30] The review is limited and the decision of the ALJ must be affirmed "if the record contains substantial evidence to support it."[31] "Substantial evidence is less than a preponderance but enough so that a reasonable mind could find it adequate to support the decision."[32] Evidence that both supports and detracts from the ALJ's decision must be considered, but the decision cannot be reversed "merely because there exists substantial evidence supporting a different outcome."[33] "Rather, if, after reviewing the record, . . . it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [ALJ's] findings, we must affirm the decision of the [ALJ]."[34] Thus, my job on review is to determine whether the ALJ's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error.[35]

---

[27]*Id.*

[28]A.R. 256.

[29]A.R. 265-71.

[30]42 U.S.C. § 405(g).

[31]*Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003).

[32]*Id.*

[33]*Id.*

[34]*Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000) (citations and quotations omitted).

[35]*Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997); see also, 42 U.S.C. § 405(g).

4

**III.    DISCUSSION**

Plaintiff argues that the ALJ's decision was not supported by substantial evidence for four reasons. First, the ALJ insufficiently explained how the medical evidence was inconsistent with Plaintiff's subjective complaints of pain. Second, the ALJ summarily dismissed Plaintiff's mental limitations when determining that his impairments wouldn't prevent him form performing light and unskilled work. Third, the ALJ's hypothetical question to a vocational expert at the hearing did not fully describe Plaintiff's limitations. Finally, Plaintiff also argues that the Appeals Council erred by not reviewing the ALJ's decision.

To be eligible for disability benefits, a claimant "must establish a physical [or mental] impairment lasting at least one year that prevents him from engaging in any gainful activity."[36] A five-step sequential process is used to evaluate claims for disability benefits:[37]

> (1) whether the claimant is currently working; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals an impairment listed in Appendix 1; (4) whether the impairment prevents the claimant from doing past relevant work; and finally, (5) whether the impairment prevents the claimant from doing any other work. When a determination that an individual is or is not disabled can be made at any step, evaluation under a subsequent step is unnecessary. Only if the final stage is reached does the fact finder consider the claimant's age, education, and work experience in light of his or her residual functional capacity.[38]

---

[36]*Fines v. Apfel*, 149 F.3d 893, 894 (8th Cir. 1998). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(A).

[37]20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

[38]*Bartlett v. Heckler*, 777 F.2d 1318, 1319 (8th Cir. 1985).

If the Commissioner determines that the individual is not disabled at any step then evaluation of subsequent steps is unnecessary.[39] Neither side disputes that the ALJ denied benefits at step five, and found that Plaintiff could work other jobs in the national economy.[40]

### A.   Physical Impairments

The ALJ found that Plaintiff's claims were "credible only to the extent that the alleged symptoms prevent him from performing within the light level of exertion at the unskilled level."[41] In *Polaski v. Heckler* the Eighth Circuit adopted five factors that the ALJ must use to analyze the credibility of a claimant:

1. the claimant's daily activities;
2. the duration, frequency and intensity of the pain;
3. precipitating and aggravating factors;
4. dosage, effectiveness and side effects of medication;
5. functional restrictions.[42]

However, the ALJ need not discuss every factor in relation to the claimant's credibility.[43] I must "defer to an ALJ's credibility finding as long as the ALJ explicitly discredits a claimant's testimony and gives a good reason for doing so."[44]

Plaintiff alleges that the ALJ failed to explain how his complaints of pain were inconsistent with the evidence on the record. Specifically, Plaintiff argues that the opinions of Plaintiff's treating physician were discredited in favor of the opinions of the non-treating

---

[39] Brief of Defendant, Doc. No. 21, p. 4 (citing *Barlett v. Heckler*, 777 F.2d 1318, 1319 (8th Cir. 1985)).

[40] A.R. 10.

[41] A.R. 16.

[42] 751 F.2d 943, 948 (8th Cir. 1985).

[43] *Casey v. Astrue*, 503 F.3d 687, 696 (8th Cir. 2007).

[44] *Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007) (internal citations omitted).

physician who reviewed his file. "[A] treating physician's opinion is normally accorded a higher degree of deference than that of a consulting physician."[45] Dr. Marvin Kirk was the only doctor of record to treat Plaintiff for pain.[46] It appears that Dr. Kirk saw Plaintiff three times between April and July 2008.[47] Dr. Kirk diagnosed Plaintiff with fibromyalgia on his first visit.[48] The doctor's notes indicate that Plaintiff reported tenderness in 18 out of 18 areas typical for fibromyalgia.[49] Plaintiff told Dr. Kirk that he had experienced this pain for years.[50] Dr. Kirk first treated Plaintiff with Lyrica, but it did not seem to help.[51] Plaintiff was prescribed Flexirol on the second appointment.[52] The notes of the third appointment did not indicate whether the treatment with Flexirol had improved his condition.[53] On the third appointment Dr. Kirk diagnosed Plaintiff with tendonitis in his left elbow and leg.[54] The doctor injected Plaintiff with Marcaine and Cortisone, and Plaintiff reported some relief.[55] Dr. Kirk's notes do not show that he suggested any limitations to Plaintiff's ability to work.

---

[45] *Thomas v. Sullivan*, 928 F.2d 255, 259 (8th Cir. 1991).

[46] A.R. 256-58.

[47] *Id.*

[48] A.R. 258.

[49] *Id.*

[50] *Id.*

[51] A.R. 257.

[52] A.R. 256.

[53] *Id.*

[54] *Id.*

[55] *Id.*

Plaintiff testified that he did not continue taking medication for his fibromyalgia because he could not afford it. Plaintiff directs my attention to what appears to be an error in the ALJ's decision that suggests that Plaintiff was taking appropriate medications.[56] This appears to be a mistake because the ALJ's decision later states that Plaintiff was *not* taking medications because of his inability to pay for them.[57] However, the error is harmless because it is not necessary to the ALJ's conclusion that Plaintiff could still do light work despite his limitations. It is also harmless because the ALJ does acknowledge later in the decision that Plaintiff was not taking the medications prescribed to him[58] Additionally, this discussion of medication shows that the ALJ considered the available treatment options when deciding that Plaintiff could still perform light work.

A residual functional capacity ("RFC") report was prepared by Dr. Bill Payne, a state agency consultant, who found that Plaintiff could perform light work. Dr. Payne's RFC notes that Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently.[59] The RFC also indicated that Plaintiff has the ability to stand, sit, and/or walk 8 hours a day, and was not restricted in his ability push or pull.[60] The ALJ found that Dr. Payne's report supported a determination of "not disabled."[61] The ALJ noted that since the RFC did not come from a treating physician it would not have the same weight in his determination.

---

[56]A.R. 15.

[57]A.R. 16-17.

[58]*Id*.

[59]A.R. 259-60.

[60]*Id*.

[61]A.R. 15.

It appears that the ALJ did consider Dr. Kirk's opinions,[62] but found that even with "mildly severe" fibromyalgia Plaintiff could still perform light work.[63] The "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but "the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment."[64] Moreover, the ALJ found "[t]here is no evidence to show the claimant has been advised to permanently limit his activities as a result of any diagnosed conditions, nor is there evidence from which to conclude that he has ever been medically advised he is totally precluded from all work activity."[65] Thus it appears that the ALJ explicitly discredited Plaintiff's testimony about his pain, finding that it was not supported by the evidence to the extent that Plaintiff could no longer do any work. It is clear that the ALJ considered the duration, frequency, and intensity of the pain, the available treatment, and the functional restrictions. As discussed above, a detailed finding on every factor is not necessary, and I must defer to the ALJ's credibility finding because there is a sufficient explanation.

  B. **Mental Impairments**

It also appears that the ALJ considered the opinions of the treating physicians who attempted to help Plaintiff with his bipolar disorder, depression, and relational problems. As with the fibromyalgia, the ALJ determined that Plaintiff's mental health issues would not prevent him from light work with appropriate restrictions. This conclusion is supported by substantial

---

[62] A.R. 11-12.

[63] A.R. 17.

[64] *Id.*

[65] *Id.*

evidence. There is nothing in the notes of Dr. Beard or the Counseling Clinic that indicates that Plaintiff's bipolar disorder or depression would prevent him from performing unskilled work with little interpersonal contact.[66] In fact, it appears that Plaintiff discussed finding a new job on several occasions with the mental health professionals at the Counseling Clinic.[67] Plaintiff's mental healthcare records were reviewed by Dr. Paula Lynch, a state agency mental health professional.[68] Dr. Lynch determined that Plaintiff was able to "preform work where interpersonal contact is incidental to work performed, . . . [and the] supervision required is simple, direct, and concrete."[69] Another state mental health professional, Dr. Jay Rankin, affirmed the findings in Dr. Lynch's report.[70] The ALJ gave the conclusions of the state mental health professionals significant weight.[71] However, this does not seem to be improper, because it cannot be inferred from the treating physician's reports that Plaintiff could not perform unskilled work.

It is clear from the ALJ's decision that he did discuss the treatment available to Plaintiff for his mental impairments. The ALJ discussed how Plaintiff took medication for bipolar disorder and depression, but told his doctors that he did not believe it helped him.[72] Although, he was told by his girlfriend that it did help with his mental health problems.[73] As with the medicine

---

[66]A.R. 236-55.

[67]A.R. 247-49.

[68]A.R. 15.

[69]*Id.*

[70]A.R. 263-64.

[71]A.R. 15.

[72]A.R. 16.

[73]*Id.*

prescribed for fibromyalgia, Plaintiff stated that he could not afford treatment.[74] However, he was referred to a free clinic and was advised to apply for prescription assistance.[75] Nothing in the record suggests that Plaintiff was never denied treatment because of his inability to pay. The ALJ's decision acknowledges that Plaintiff has had issues with depression for most of his life, and that Plaintiff's anger issues and other mental impairments had interfered with his ability to work.[76] Plaintiff testified that he did not know if he had bipolar disorder, but was told by Dr. Beard and other doctors that he did have this impairment.[77] The ALJ discussed that Plaintiff often had trouble sleeping and would sometimes stay in bed all day to avoid his problems. Thus the record shows that the ALJ discussed the duration, intensity and frequency of Plaintiff's mental health issues.[78] There is substantial evidence in the record to support the ALJ's decision that Plaintiff's mental impairments would not prevent him from performing light, unskilled work with the other appropriate restrictions.

    **C.**    **Questions of Vocational Expert**

Plaintiff alleges that the ALJ erred by considering the testimony of the vocational expert without having the expert consider all of Plaintiff's limitations, particularly his illiteracy. The ALJ can rely on the testimony of a vocational expert to satisfy the "burden of showing that the claimant can perform other work."[79] "Testimony from a vocational expert is substantial evidence only when the testimony is based on a correctly phrased hypothetical question that captures the

---

[74]*Id.*

[75]A.R. 166, 178, 238.

[76]A.R. 16.

[77]*Id.*

[78]*Id.*

[79]*Robson v. Astrue*, 526 F.3d 389, 392 (8th Cir. 2008).

concrete consequences of a claimant's deficiencies."[80] The ALJ relied on vocational expert Mack Welch to decide that despite Plaintiff's impairments and limitations he could work as a hand packer or a nut and bolt assembler.[81] Before asking the question the ALJ described the hypothetical individual as:

> "the same age, education, and vocational profile as the claimaint ... restricted to the equivalent of light work, . . . [a]nd mentally he is restricted to the equivalent of unskilled work[,] . . . where interpersonal contact is incidental to the work peformed[,] . . . the complexity of tasks is learned and performed by rote[,] . . . involves few variables, requires little independent judgment, and the supervision required is simple, direct, and concrete[,] . . . [without] deal[ing] with the general public, . . . intensive pressure, or stress.[82]

Mr. Mack reviewed Plaintiff's file which indicated that he was illiterate, so the educational profile of the individual in the hypothetical would have reflected Plaintiff's illiteracy.[83] The hypothetical posed to the vocational expert was adequate to produce a response that reflected Plaintiff's impairments and limitations as supported by the evidence in the record.

### D.     Appeals Council Denial of ALJ Review

Plaintiff argues that the Appeals Council should have reviewed the ALJ's decision based on new evidence. If the Appeals Council receives new evidence but denies review of the ALJ decision, then I must determine if the ALJ's decision is supported by substantial evidence on the record, including any new evidence.[84] "To be 'new,' evidence must be more than merely cumulative of other evidence in the record."[85] At issue is the report of Dr. Kenneth Counts, who

---

[80]*Cox v. Astrue*, 495 F.3d 614, 620 (8th Cir.2007).

[81]A.R. 19.

[82]A.R. 50.

[83]A.R. 49.

[84]*Lamp v. Astrue*, 531 F.3d 629, 632 (8th Cir. 2008).

[85]*Bergmann v. Apfel*, 207 F.3d 1065, 1069 (8th Cir.2000).

saw Plaintiff one-time and diagnosed him with schizophrenia. Dr. Counts found that Plaintiff suffered from auditory hallucinations, would be unable to complete tasks within the required time, would be limited in his abilities to relate with co-workers, deal with the public, interact with supervisors, deal with work stress, maintain concentration, and understand and remember detailed job instructions.[86] Dr. Counts' report did not review the treatment records from Plaintiff's seven months in therapy, as was done by the state agency consultants. Much of Dr. Count's assessment is cumulative to the reports provided by his the other mental health professionals that treated Plaintiff. It particularly seems to be cumulative to the notes from the seven months of mental health counseling treatment he received from Counseling Clinic, Inc.[87] The notes from Counseling Clinic, Inc., indicate that Plaintiff sought help for anger issues, fear of failure, low self confidence, delusions of reading people's minds, persecution complex, and auditory hallucinations.[88]

The ALJ's RFC accounted for Plaintiff's mental limitations, finding that Plaintiff was "restricted to unskilled work, or work where interpersonal contact is incidental to the work variables, the complexity of tasks is learned and performed by rote, involves few variables, requires little independent judgment; and the supervision required is simple, direct, and concrete."[89] It is unlikely that the ALJ would have changed the RFC based on Dr. Counts' opinion. Thus the Appeals Council could decide that the new evidence was not a sufficient basis for reversing the ALJ decision.

---

[86] A.R. 270-71.

[87] Ar. 237-55.

[88] *Id*.

[89] A.R. 14.

**CONCLUSION**

Because there is substantial evidence to support the ALJ's decision, I need not second guess the ALJ's decision.[90] For the reasons discussed above, Plaintiff's motion (Doc. No. 16) is DENIED, and Defendant's motion (Doc. No. 21) is GRANTED.

IT IS SO ORDERED this 21st day of April, 2011.

/s/Billy Roy Wilson
UNITED STATES DISTRICT JUDGE

---

[90]*Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010) (explaining that the question is not whether there is substantial evidence that the claimant is impaired, but that there is substantial evidence to support the ALJ's findings).